UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS P. ACKERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:21-CV-814 PLC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security[1], | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Thomas P. Ackerman seeks review of the decision of Defendant Acting Social Security Commissioner Kilolo Kijakazi, denying his application for Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

**I.      Background and Procedural History**

On July 25, 2019, Plaintiff filed an application for SSI, alleging he was disabled as of August 1, 2018, due to spinal nerve damage, massive depression[2], burning sensation in arms/thighs, and heart problems. (Tr. 10, 75) The Social Security Administration (SSA) initially denied Plaintiff's claim in December 2019, and he filed a timely request for a hearing before an

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Because Plaintiff does not challenge the ALJ's determination that he was not under a disability as defined in the Social Security Act due to his alleged mental impairment, the Court does not discuss the finding in its Order.

administrative law judge (ALJ).  (Tr. 75-81, 82-84)  The SSA granted Plaintiff's request for review and conducted a hearing in September 2020.   (Tr. 24-44)

In a decision dated November 12, 2020, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act since July 25, 2019, the date the application was filed." (Tr. 10-20)  Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 1-6)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

Plaintiff, born March 17, 1970, testified that he lived alone in a condominium, but had regular visitation with his 16- and 12-year old children.  (Tr. 30-31, 139)  He testified that he was able to dress and feed himself, but always made sure to have someone nearby when taking a shower "in case my back were to completely lock up or something of that nature."  (Tr. 31)  Plaintiff testified that his children helped with chores during the week, including laundry, dishes, vacuuming and cleaning.  (Tr. 32)

When the ALJ asked why he believed he was disabled, Plaintiff responded that he had a constant shooting pain in his lower back.[3]  (Tr. 33)  Plaintiff testified that moving around, including standing, walking[4], and sitting in a hard chair, aggravated his pain.  (Tr. 34)  With respect to sitting, Plaintiff stated as follows:  "I mean, like a sitting in a kitchen chair, I'm only going to get a minute or two and then it just becomes unbearable.  Or even a regular office chair with lumbar support, like I said, I get two or three minutes and then I have to get out of it…The only way I get a little

---

[3] Plaintiff stated that at times, the pain would travel up through his arms to his shoulder.  (Tr. 34)
[4] According to Plaintiff, he could walk for two to three minutes, and stand for three to four minutes, before suffering pain.  (Tr. 34-35)

2

relief is in a recliner fully with my legs up….But I mean even in that…I can sit in it for…[a] half hour or 45…minutes, you know, maybe an hour, and then I have to kind of get up and move[.]" (Tr. 37-38)  Plaintiff testified that he had been using a cane much of the time for over a year[5], but acknowledged that the assistive device was not prescribed by a medical professional.  (Tr. 39-41)  Plaintiff stated he had tried several medications to ease his pain, but stopped when they did not work or caused unwanted side effects.[6]  (Tr. 35-36)

A vocational expert testified at the hearing.  (Tr. 42-43)  The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age and education[7], with the following limitations:

> [Assume a hypothetical individual] who is able to perform work at only a light exertional level, limited to frequent ramps and stairs.  No ladders, ropes, or scaffolds.  Occasional balance as defined by the *DOT*.  Occasional stoop, kneel, crouch, crawl.  Frequent handling and fingering bilaterally, frequent reaching in all directions.  No unprotected heights, no hazardous machinery, only occasional exposure to extreme cold or vibration.  Is there any work in the national economy that fits within the parameters of that hypothetical?

(Tr. 42)  The vocational expert stated that such an individual could work as a "housekeeping cleaner[]", mail room clerk, or food counter worker.  (Tr. 43)  When the ALJ modified the hypothetical to add the restriction that the individual would need frequent breaks outside of those normally scheduled, the vocational expert testified that said limitation would not be consistent with employment, but would possibly be tolerated as an accommodation.  (*Id.*)  Finally, the vocational expert opined that in the unskilled job market, two unexcused absences in any one

---

[5] Plaintiff stated he used the cane because he lost stability when the shooting pain commenced. (Tr. 40)
[6] When the ALJ asked if Plaintiff currently took anything for his pain, he replied, "Honestly I drink more."  (Tr. 37)
[7] The ALJ stated Plaintiff had no past relevant work.  (Tr. 42)

month, or any regular unexcused absences, even once a month, would eventually result in termination. (*Id.*)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in his Statement of Facts, which the Commissioner admitted with certain additions and clarifications. (ECF Nos. 16, 22-1) The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III. Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the

claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity (RFC), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an

5

adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(g).

## IV. The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 416.920 and found that Plaintiff: (1) had not engaged in substantial gainful activity since July 25, 2019, the application date; and (2) had the severe impairments of degenerative disc disease and obesity, that significantly limited his ability to perform basic work activities as required by SSR 85-28. (Tr. 12) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 16) For example, the ALJ noted that although Plaintiff alleged inability to work primarily due to chronic back pain, the objective evidence and imaging of his back did not support the degree of pain alleged. (*Id.*) The ALJ further noted that Plaintiff's physical examinations were "relatively normal," and although he met with a

6

pain management specialist in April 2019, the provider did not recommend additional imaging or physical therapy, and there is no indication that Plaintiff had any follow-up appointments. (Tr. 17) Finally, the ALJ stated that Plaintiff underwent a consultative examination with Deborah Wagner, P.A., in November, 2019, and Ms. Wagner noted Plaintiff was able to hop on each foot, tandem walk, rise from the chair (with mild difficulty), and get on and off the examination table without assistance. (*Id.*)

The ALJ considered the medical opinion in the record, and found that Dr. Kevin Threlkeld's December 6, 2019 opinion was "not persuasive, particularly as to the sedentary exertional restrictions, as it was not consistent with the objective medical evidence." (Tr. 18) After comparing Dr. Threlkeld's restrictions with the examination reports, testing and imaging in the record, the ALJ found Dr. Threlkeld's opinion "was neither supported, nor was it consistent with the objective medical evidence, making it unpersuasive." (Tr. 18-19)

After reviewing Plaintiff's testimony and medical records, the ALJ determined that Plaintiff had the RFC to perform light work, with the following restrictions:

> [F]requently climb ramps and stairs, but never climb ladders ropes or scaffolds; occasionally balance (as defined in the Dictionary of Occupational Titles—DOT) stoop, kneel, crouch, and crawl; frequently handle and finger bilaterally; frequently reach in all directions; no unprotected heights; no hazardous machinery; only occasional exposure to extreme cold or vibration.

(Tr. 15) Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as housekeeper and mail room clerk. (Tr. 19-20) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 25, 2019, the date the application was filed. (Tr. 20)

**V.     Discussion**

Plaintiff claims the ALJ erred in determining his RFC because substantial evidence did not exist in the record to support the RFC determination. (ECF No. 28) The Commissioner counters that substantial evidence supported the ALJ's RFC determination. (ECF No. 34)

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  RFC Determination

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). *See also Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical

8

records, observations of treating physicians and others, and an individual's own description of his limitations." *Moore*, 572 F.3d at 523 (internal quotation marks and citation omitted).

The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

Plaintiff claims the ALJ erred in determining his physical RFC because the finding was not supported by substantial evidence. More specifically, Plaintiff states as follows:

> Here, the ALJ assessed an RFC for light work, with no limitation in Ackerman's ability to stand or walk. In coming to this conclusion, [she] dismissed the only opinion of record, which limited Ackerman to sedentary work, and did not identify other medical evidence which indicated Ackerman was capable of unlimited standing or walking.

(ECF No. 16, P. 1)

As noted above, the ALJ found the State agency consultant's opinion, in which he stated Plaintiff was capable of standing and/or walking for a total of 2 hours in an 8-hour workday, was not persuasive, particularly as to the sedentary exertional restrictions. (Tr. 18) With references to specific medical evidence in the record, she explained how the objective testing and imaging did not support the degree of limitation associated with a sedentary exertional level. (Tr. 18-19)

9

The ALJ continued to find that Plaintiff had the RFC to perform light work with some climbing, balancing, reaching, postural and environmental limitations. (Tr. 15)  The ALJ did not address standing or walking capabilities in either her hypothetical to the vocational expert or her opinion, however.  Despite this omission, she concluded Plaintiff had the RFC to perform jobs at the light exertional level, such as housekeeper and mail room clerk.

Under the Regulations, light work involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).  Social Security Ruling 83-10p further explains that light work involves standing or walking for "approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983).

In making her determination, the ALJ did not explain how any evidence of record supported her assessment of light exertional level capability.  In particular, she did not discuss how the medical evidence of record supported her apparent conclusion that Plaintiff had the ability to engage in the standing and/or walking activities required for light work during the relevant period. *See Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) ("There is simply no reliable evidence providing a basis for the specific conclusion that Noerper can stand or walk for 6 hours in an 8-hour workday.")  An ALJ's RFC assessment must discuss and describe how the evidence supports each conclusion, and must cite specific medical facts and nonmedical evidence in doing so, as well as resolve any material inconsistencies or ambiguities in the evidence of record. SSR 96-8p, 1996 WL 374184, at *7.  The ALJ did not undergo this process here.  In other words, although she

thoroughly summarized the medical evidence of record, the ALJ did not justify how she translated her understanding of the medical evidence into a conclusion that Plaintiff could engage in light work.

The Court recognizes that an ALJ need not "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality." *Noerper*, 964 F.3d at 746. "Something, however, is needed," *Id.*, as an ALJ may not simply draw her own inferences about a claimant's functional abilities from medical reports. *Combs*, 878 F.3d at 646. "Here, the absence of evidence translating the medical evidence and subjective complaints into functional limitations….leaves us unable to determine the permissibility of the Commissioner's RFC determination." *Noerper*, 964 F.3d at 747. *See also Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotation marks and citations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.")

As noted above, in the sole physical RFC assessment in the record Dr. Threlkeld opined that Plaintiff was not disabled, as he was capable of performing work at the sedentary exertional level. (Tr. 50-58) Pursuant to 42 U.S.C. § 405(g), this Court has the power to "affirm[], modify[] or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court will not simply modify the Commissioner's decision in accordance with Dr. Threlkeld's finding, however, for two reasons. First, at the time Dr. Threlkeld provided his opinion, Plaintiff's age was 49 years, 8 months. (Tr. 58) By the time the ALJ conducted Plaintiff's hearing in September, 2020, Plaintiff had reached the age of 50, and thus

11

moved into the category of "approaching advanced age" for purposes of determining maximum sustained work capability. Second, in her hypotheticals to the vocational expert the ALJ never asked him to consider an individual of Plaintiff's age and education who was able to perform work at only the sedentary exertional level, either with or without other limitations.

Upon consideration of the foregoing, the Court will remand this matter to the Commissioner to more fully identify, evaluate and supplement as necessary the medical and nonmedical evidence of record supporting either her original conclusion as to Plaintiff's RFC, or any amended RFC determination she may render.

VI. Conclusion

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

PATRICIA L. COHEN  
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of March, 2023.